UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at WINCHESTER

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | Case No. 4:09-cr-53 |
| v. | ) | |
| | ) | *Mattice / Lee* |
| DAVID FLETCHER | ) | |

## REPORT AND RECOMMENDATION

Before the Court is a second motion to suppress filed by Defendant David Fletcher ("Defendant"). Defendant seeks to suppress a firearm discovered during a search of his person following a traffic stop on May 13, 2009 [Doc. 27].[1] After police lawfully stopped the car in which Defendant was a passenger, Defendant's person was searched and two pills were found, one of which the police believed to be a controlled substance. Subsequently, Defendant was placed under arrest and, during a search incident to that arrest, a loaded handgun was found in Defendant's waistband. In the current motion, Defendant challenges the first search of his person and seeks to suppress the gun found during the second search as "fruit of the poisonous tree." The Government seeks to justify the first search on the basis of Defendant's consent. After considering the evidence and the arguments, I find that Defendant consented to the first search of his person, and I **RECOMMEND** that Defendant's second motion to suppress [Doc. 27] be **DENIED**.

---

[1] Defendant's first motion to suppress challenged the constitutionality of the traffic stop of the vehicle in which Defendant was a passenger. After a hearing, I found the stop was proper and issued a detailed report and recommendation in which I recommended the motion be denied ("the first R&R") [Doc. 17]. Defendant's objections to the first R&R are still pending. The factual findings set forth in the first R&R are hereby incorporated by reference and will not be repeated herein. The second motion was also referred for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) [Doc. 29]. The Government filed a response in opposition to the second motion to suppress [Doc. 33] and an evidentiary hearing was held on July 1, 2010. Each party filed a post-hearing brief regarding their respective arguments [Doc. 39 & 40], which have been fully considered. The second motion to suppress is now ripe for decision.

I.  **BACKGROUND**

As in the evidentiary hearing for Defendant's first motion to suppress, the Government offered the testimony of Sergeant Jason Ferrell ("Ferrell") and Detective Jason Kennedy ("Kennedy") of the Tullahoma Police Department.

Kennedy testified as follows: After the traffic stop, he asked Defendant, the passenger, to step out of the vehicle. After asking Defendant his name, Kennedy asked Defendant whether he had any weapons, drugs, or anything illegal. Defendant replied he did not. Kennedy then asked Defendant, "Can I search you?" and Defendant answered, "Yes." Kennedy did not tell Defendant he had a right not to consent. Kennedy immediately proceeded to search Defendant's person. "A couple seconds" into the search, Kennedy felt a pill in Defendant's watch pocket. He did not know whether it was a controlled substance by feeling it, but he suspected it might be.

Kennedy pulled the tablet out of Defendant's pocket and asked him what it was. Defendant did not answer. Kennedy then asked whether the pill was "X," and Defendant replied that it was. "X" is a slang term for Ecstasy, which is a controlled substance. Kennedy suspected the pill was Ecstasy because of its texture (rough, broken edges, with the appearance of something that had been manufactured in a "clandestine" lab) and its size (smaller than most "regular" pills). Kennedy is trained to identify controlled substances and has seen Ecstasy before on several occasions. Kennedy continued searching and found another pill, a capsule in a plastic bag, which he was unable to identify. Kennedy did not recall asking Defendant any questions about the capsule.

Kennedy testified he was not performing a patdown or frisk of Defendant when he found the pills because he received Defendant's consent for a full search of Defendant's person. Kennedy believed there were some limitations to his ability to search Defendant's person even with

Defendant's full consent. For example, Kennedy testified he would not have searched Defendant's groin area or would not have made Defendant strip for an anal cavity search, but he would have asked Defendant to remove his shoes and socks to search them if necessary. Kennedy understood that the bounds of his search were limited by the nature of the contraband he suspected Defendant might have possessed – namely, drugs. Kennedy explained that the officers had smelled marijuana smoke and had recovered marijuana from the car's driver. Although there were many officers at the scene, Kennedy did not have his gun drawn and he did not raise his voice when he asked Defendant for permission to search. Defendant's demeanor was "cooperative."

At the time of this initial search, Kennedy and Defendant were standing in a parking lot approximately 35 yards from Defendant's girlfriend's apartment. Kennedy asked Defendant for permission to search the apartment, which Defendant granted. Defendant accompanied Kennedy into the apartment, and Kennedy searched for approximately 20 minutes without finding anything illegal. At that time, Kennedy placed Defendant under arrest, informing him he was arresting him for possession of Ecstasy. Defendant never denied the pill was Ecstasy.

Kennedy then searched Defendant incident to the arrest and in doing so lifted his shirt, which he had not done before. Under Defendant's shirt, tucked into his waistband on the left side, was a loaded gun. Frightened that Defendant had been armed during the entire encounter, Kennedy asked Defendant why he did not tell him earlier that he had a weapon. Defendant responded that he *did* tell Kennedy he was armed when Kennedy first asked if he had any weapons, but that Kennedy just did not hear him.

On most of the paperwork completed in conjunction with Defendant's arrest,[2] Kennedy does not mention the second pill. In his narrative account of the incident, Kennedy mentions only "*a* pill that is believed to be Ecstasy" in Defendant's right pocket. (Emphasis added). Both the tablet and the capsule, however, were later sent for laboratory testing. The examination request form[3] submitted by Kennedy asks for an identification of "1 pill believed to be Ecstasy and another unknown pill in baggie." Testing revealed that the tablet Kennedy believed was Ecstasy contained no controlled substances, but the capsule contained Oxycodone. Kennedy acknowledged that his failure to list what turned out to be the Oxycodone pill in most of the paperwork, particularly the evidence and property record sheet, violated the procedures of the Tullahoma Police Department.

Ferrell's testimony corroborated Kennedy's. Ferrell stated he was standing near Defendant when he heard Kennedy ask Defendant, "is this X?" According to Ferrell, Defendant replied, "yes, I forgot it was in there." After the initial search, Ferrell looked at the tablet Kennedy believed to be Ecstasy, and he too believed it was Ecstasy because of its texture and shape. Ferrell briefly looked at the capsule, too, but he did not look for any manufacturer's markings and could not identify it.[4]

## II. ANALYSIS

As a result of the stop and searches, Defendant was charged in a one-count indictment with being a felon in possession of a firearm and ammunition [Doc. 1]. In support of his second motion

---

[2] This paperwork includes the evidence and property record sheet (Defendant's Exhibit 1), affidavit of complaint for the charge of unlawful possession of a weapon (Defendant's Exhibit 2), affidavit of complaint for the charge of possession of a Schedule I drug (Defendant's Exhibit 3), and the police incident report (Defendant's Exhibit 4), all of which were admitted without objection.

[3] Government's Exhibit 1.

[4] Defendant called inmate Jeremy Blair to testify, but excused him before asking any questions. Defendant elected not to testify. As a result, Defendant did not put on any witnesses.

to suppress, Defendant appears to contend that (1) he did not voluntarily consent to a search of his person and (2) his consent was limited in scope to a *Terry*[5] patdown or frisk, not a full search, of his person.

   A.   **Voluntary Consent**

Defendant argues his consent was not voluntary because he was in custody when asked for consent, he was not advised of his right to refuse consent, and he elected to be patted down in the hopes of avoiding arrest [Doc. 39 at 4].

Police may properly request consent to search during or after a valid traffic stop. *United States v. Canipe*, 569 F.3d 597, 601 (6th Cir. 2009) (consent given after traffic stop concluded); *United States v. Hurst*, 228 F.3d 751, 757 (6th Cir. 2000) (consent given during traffic stop). A search conducted pursuant to a valid consent is an exception to the Fourth Amendment's general warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). If the validity of the alleged consent is challenged, as here, the Government has the burden to show by a preponderance of the evidence that, based on the "totality of the circumstances," the consent was knowing and voluntary. *See*, *e.g.*, *id.* at 227; *United States v. Mendenhall*, 446 U.S. 544, 557-58 (1980); *United States v. Abdullah*, 162 F.3d 897, 902 (6th Cir. 1998) (government's burden of proof and validity of consent established based on officers' credible testimony that the defendant, despite his claims to the contrary, clearly understood their request). A defendant does not need to know he has the right to refuse consent in order to give an effective consent. *Bustamonte*, 412 U.S. at 227. The critical question is whether the person giving consent felt coerced or gave consent voluntarily.

---

[5] *Terry v. Ohio*, 392 U.S. 1 (1968).

*United States v. Guimond*, 116 F.3d 166, 170-71 (6th Cir. 1997).

In determining whether consent was voluntary, courts consider several factors, such as the characteristics of the accused, including his age, intelligence, and education; whether he understood the right to withhold consent; and whether he understood his constitutional rights. *United States v. Ivy*, 165 F.3d 397, 402 (6th Cir. 1998). Courts also should consider the details of the detention, including its length and nature, and the use of coercive or punishing conduct by the police, as well as more subtle forms of coercion that might effect one's judgment. *Id.* at 402; *see also United States v. Crowder*, 62 F.3d 782, 787 (6th Cir. 1995) (considering factors).

The evidence presented during the hearing does not support Defendant's argument – that because he was allegedly in custody when asked for consent, was not advised of his right to refuse consent, and elected to be patted down in the hopes of avoiding arrest – his consent was not voluntary. First, there is no evidence to support any claim that Defendant was under arrest at the time he was asked for consent. The evidence instead demonstrates that Defendant was merely, and properly, detained as the passenger of a vehicle involved in a valid traffic stop as set forth in the first R&R. *See United States v. Jones*, 562 F.3d 768, 774 (6th Cir. 2009) (traffic stop is a seizure of the driver and any passengers). Second, an effective consent does not require that Defendant be told he has the right to refuse consent. *Bustamonte*, 412 U.S. at 227. Third, Defendant's claim that he merely elected to be frisked in the hopes of avoiding arrest does not suggest his consent was involuntary. To the contrary, it indicates that his consent was a deliberate, thought-out, and voluntary choice made in the hopes of avoiding arrest.

Considering the length and nature of Defendant's detention, there is simply no evidence Defendant's consent was the result of police threats, aggressive language, removal to a non-public

6

venue, or prolonged detention in this case. Kennedy testified credibly that he did not raise his voice or draw his gun when he requested permission to search Defendant's person, and Defendant gave the requested consent within minutes of the stop on a public street. While Defendant did not specifically argue he was intimidated, the Government did address the issue of intimidation, noting that a significant number of officers – eight – were present. As argued by the Government, however, there is no evidence that the other officers' presence was in any way threatening. *See United States v. Ledesma*, 447 F.3d 1307, 1314 (10th Cir. 2006).

Considering Defendant's age, intelligence, and conduct, as presented through the officers' testimony at both the first and second suppression hearings, there is no evidence Defendant felt coerced into consenting. First, although a Defendant need not know he can refuse consent in order to validly give it, Defendant apparently understood he had the right to refuse consent. As explained above, Defendant's contention that he gave consent for a patdown in the hopes of avoiding arrest indicates that he engaged in a deliberate process and determined it was in his own interest to consent. Second, this deliberative process shows a level of intelligence sufficient to support the conclusion that Defendant had the ability to consent. Although no evidence was presented concerning Defendant's experience with the justice system, based on his pending charge of being a felon in possession of a firearm, I **FIND** Defendant has prior experience with the legal system and is not a novice in that regard.[6] Finally, Defendant's previous *pro se* motion requesting new counsel [Doc. 18], and his conduct during the hearing held on that motion, exhibit both intelligence and an

---

[6] The Government's argument that Defendant has three convictions for violent felonies (all robberies) within the past ten years [Doc. 40 at 4] may be correct, but it is not being considered since no proof was submitted regarding Defendant's criminal history.

understanding of the legal process.

Nothing indicates Defendant gave consent as an "expression of futility" or in acquiescence to Kennedy's authority. *See United States v. Worley*, 193 F.3d 380, 386 (6th Cir. 1999). Again, by his own admission, Defendant made a calculated decision to attempt to avoid arrest by agreeing to the search of his person, forgetting he had a pill he agreed was "X" in his pocket. Based on the totality of the circumstances, I **FIND** the Government has met its burden to show by a preponderance of the evidence that Defendant's consent to a search of his person was knowingly and voluntarily made and, therefore, was valid.

### B. Scope of the Consent

Defendant argues he was only requested to consent to a patdown and that Kennedy's search exceeded the scope of such a patdown. The Government counters that Kennedy requested and obtained consent for a full search of Defendant's person for drugs and weapons, not a frisk.

Defendant's argument that Kennedy violated the plain feel doctrine articulated in *Minnesota v. Dickerson*, 508 U.S. 366, 371, 375 (1993), fails because the plain feel doctrine, which is an extension of the plain view doctrine, applies to a *Terry* patdown, not a consensual search. *See United States v. McGlown*, 150 F. App'x 462, 467 (6th Cir. 2005); *United States v. Moore*, 375 F.3d 580, 584-85 (7th Cir. 2004) (holding the defendant consented to full search, not patdown). It appears undisputed Kennedy did not conduct a *Terry* patdown. Thus, it is not necessary to address whether a patdown was properly performed; the issue is whether the search by Kennedy exceeded the scope of the consent Defendant gave for the search of his person.

"When law enforcement officers rely upon consent as the basis for a warrantless search, the scope of the consent given determines the permissible scope of the search." *United States v. Gant*,

8

112 F.3d 239, 242 (6th Cir. 1997). The permissible scope of a search conducted pursuant to a consent is that which a reasonable person would have understood from the interaction between the officer and the person granting the consent. *Florida v. Jimeno*, 500 U.S. 248, 251 (1991).

Kennedy credibly testified he asked Defendant whether he had any weapons, drugs, or anything illegal. When Defendant replied he did not, Kennedy asked for consent to search, and Defendant granted permission without attaching any limitations. The explicit object of Kennedy's search included weapons and drugs, and Kennedy did not exceed those purposes. The pockets in which both pills were found were within the scope of the consent to search for drugs. There is no evidence to support Defendant's argument that he gave only a limited consent to conduct a *Terry* patdown. A reasonable person would have understood from the interaction between Kennedy and Defendant that Defendant gave consent for the search of his person for drugs and guns. While Defendant correctly points to some paperwork irregularities with respect to the second pill, I do not find the officers' testimony was not credible as a result.[7]

Based on the totality of the circumstances, I **FIND** the Government has met its burden to show by a preponderance of the evidence that the search of Defendant's person was within the scope of his consent and, therefore, was valid.

---

[7] The Government addresses the credibility issue in its argument regarding probable cause for the arrest of Defendant, which resulted in a second search of Defendant's person incident to that arrest and led to the discovery of the gun [Doc. 40 at 5-6]. Defendant, however, has not argued a lack of probable cause to support his arrest as a basis for suppression. As I find there is no basis to suppress the results of the first search, and Defendant has not argued the police lacked probable cause for his arrest, it is not necessary to address probable cause for the arrest.

### III. CONCLUSION

For the reasons stated above, I **RECOMMEND**[8] that Defendant's motion to suppress [Doc. 27] be **DENIED**.

                                             s/*Susan K. Lee*
                                             SUSAN K. LEE
                                             UNITED STATES MAGISTRATE JUDGE

---

[8] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).