UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at WINCHESTER

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 4:09-cr-53 |
| v. | ) | |
| | ) | Judge Mattice |
| DAVID D. FLETCHER | ) | |

## **MEMORANDUM AND ORDER**

Before the Court are Defendant David Fletcher's Objections to two Report and Recommendations [Court Docs. 21 & 46].

Defendant filed his first Motion to Suppress [Court Doc. 11] which was referred to Magistrate Judge Susan K. Lee. [Court Doc. 12.] Magistrate Judge Lee held an evidentiary hearing on Defendant's Motion to Suppress and issued her Report and Recommendation ("R&R") [Court Doc. 17] which recommended that Defendant's motion be denied. Defendant timely filed an objection to Magistrate Judge Lee's R&R and the Government responded [Court Docs. 21 & 24]. Defendant filed a Second Motion to Suppress [Court Doc. 27] which was also referred to Magistrate Judge Susan K. Lee. [Court Doc. 29.] Magistrate Judge Lee held another evidentiary hearing and issued another Report and Recommendation [Court Doc. 42] which recommended that Defendant's motion be denied. Defendant timely filed an objection to the R&R and the Government responded [Court Docs. 46 & 54].

The Court has now reviewed the entire record pertinent to the two instant objections, and for the reasons described below, the Court will **ACCEPT and ADOPT** both of Magistrate Judge Lee's R&Rs and will **DENY** both Defendant's Motion to Suppress and

Defendant's Second Motion to Suppress.

## I. STANDARD OF REVIEW

The Court must conduct a *de novo* review of those portions of the Report and Recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendations 28 U.S.C. § 636(b)(1)(C).

## II. FACTS

Magistrate Judge Lee held an evidentiary hearing on Defendant's initial Motion to Suppress on March 25, 2010, during which Detectives Jason Kennedy and Jason Ferrell of the Tullahoma Police Department testified for the Government. In her R&R, Magistrate Judge Lee recounted at some length the facts developed at the evidentiary hearing. (Court Doc. 17, First R&R at 1-4). Magistrate Judge Lee held an evidentiary hearing on Defendant's Second Motion to Suppress on July 1, 2010, during which the Government again offered testimony of Detectives Kennedy and Ferrell. In her second R&R, Magistrate Judge Lee similarly recounted the facts developed at the evidentiary hearing. (Court Doc. 42, Second R&R at 2-4.) Defendant has not objected to the facts as outlined in Magistrate Judge Lee's R&Rs. Instead, the objections focus on the legal conclusions drawn from the facts. Accordingly, the Court **ADOPTS BY REFERENCE** the facts as set out in Magistrate Judge Lee's R&R. (First R&R at 1-4, Second R&R at 2-4.) The Court will refer to the facts only as necessary to analyze the issues raised on objection.

## III. ANALYSIS

### A. Defendant's First Motion to Suppress

Defendant's first Motion to Suppress concerned the validity of the initial traffic stop,

which resulted in the discovery of a handgun and led to the instant charge. In her R&R, Magistrate Judge Lee concluded that Detectives Kennedy and Ferrell had reasonable suspicion to stop the vehicle based on information they had received about Defendant's possible involvement in a home invasion that took place the previous day and because, shortly after receiving this information, they witnessed Defendant exit a known crack house with an individual known to be involved in weapons and drugs. (First R&R at 4-6.) Magistrate Judge Lee alternatively concluded that Detectives Kennedy and Ferrell had probable cause to stop the vehicle because they both testified that they observed that the seatbelt was hanging unfastened on the passenger side of the vehicle, where Defendant was sitting. (*Id.* at 7.)

Defendant objected to Magistrate Judge Lee's conclusion about probable cause for the traffic stop, stating that the detectives did not testify consistently about their observations regarding the seatbelt, which called their credibility into question. (Court Doc. 21, Def.'s First Objs. at 1-2.) Defendant further argued that the accuracy of the testimony was questionable because neither detective testified as to whether the driver was wearing a seatbelt or not. (*Id.* at 2.) Defendant suggests that the detectives were paying close attention to Defendant due to the tips they had received from the confidential informant (CI) and were not actively looking for any traffic violations. (*Id.*)

During the evidentiary hearing, Detective Kennedy testified:

> Q: Okay. And you also said that you observed them not wearing a seat belt?
>
> A: I observed Mr. Fletcher not wearing a seat belt.
>
> Q: How were you sure he wasn't wearing a seat belt if you were driving

> behind Mr. Fletcher?
>
> A: You can see the clasp of the seat belt hanging there.
>
> Q: So you positively saw a silver clasp to the right of him on the seat belt hanging beside him. Is that correct?
>
> A: When I say– But, I mean, you could see the buckle of the seat belt.
>
> Q: Okay. Showing that it wasn't engaged. Is that correct?
>
> A: Yes.

(Court Doc. 31, Transcript ("Tr.") at 11-12.) Detective Ferrell testified as follows:

> Q: Why did you believe there was a seat belt violation?
>
> A: Because we couldn't see it on him.
>
> Q: Okay. Now you're driving behind Mr. Blair and Mr. Fletcher. Is that correct?
>
> A: That's correct.
>
> . . .
>
> Q: So you had a good view from behind of the passenger and the driver. Is that correct?
>
> A: Yes, I did.
>
> Q: And because you were behind, did you notice the buckle was not fastened; is that how you realized that the seat belt wasn't fastened?
>
> A: Yes. I mean, you can tell if it's not across, coming down, if it's hanging over here on the side, yes.
>
> Q: Okay. So I'm just asking because you were driving behind. So you didn't actually see the front of Mr. Fletcher, but you saw the buckle

>            hanging. Is that correct?
>
> A:    Right. That's correct.

(Tr. at 27-28.) The Court will not disturb Magistrate Judge Lee's determination as to the credibility of these witnesses because, after assessing this testimony, the Court must agree with Magistrate Judge Lee's conclusion that the detectives testified consistently with regard to Defendant's seat belt. Both Detective Kennedy and Detective Ferrell testified clearly that they could see the buckle hanging to Defendant's right side, obviously unfastened. There are no inconsistencies in this testimony which would give the Court reason to question the credibility of either witness.

Moreover, when Magistrate Judge Lee issued her R&R, she did so without the benefit of the United States Court of Appeals for the Sixth Circuit's decision in *United States v. Street*, 614 F.3d 228 (6th Cir. 2010). The *Street* case is directly on point and the Sixth Circuit stated, in relevant part:

> When law enforcement officers witness a traffic violation, they may stop the driver and his car. . . there is nothing "unreasonable" about stopping a vehicle whose driver has just committed a traffic violation. See *Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). In this instance, Sergeant Gregg saw that the two occupants of the black Mustang were not wearing seatbelts, which offends Tennessee law. See Tenn.Code Ann. § 55-9-603. While this traffic violation is not an arrestable offense, see Tenn.Code Ann. § 55-9-603(f)(1), that does not divest the police of authority to stop the car, see *Pennsylvania v. Mimms*, 434 U.S. 106, 111, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (approving of stop to issue traffic summons for expired license plate); see also *Virginia v. Moore*, 553 U.S. 164, 176, 128 S.Ct. 1598, 170 L.Ed.2d 559 (2008) (upholding constitutionality of arrest for a nonarrestable traffic violation).
>
> Street . . . suggests . . . that the stop was "pretextual" . . . in the sense that the officers stopped the car not because Street and

> Randall were seatbelt-less but because an informant tipped them about the pending drug sale. But *Whren* puts an end to inquiries about an officer's state of mind in conducting a traffic stop. See 517 U.S. at 813, 116 S.Ct. 1769. The question after *Whren* goes not to the subjective motives of the officer's actions but to the objective reality (or not) of whether the officers had probable cause to believe that a crime, including a traffic violation, had occurred. See id. at 810-13, 116 S.Ct. 1769.

*Id.* at 232. The Court finds, therefore, that any other, subjective motivation Detectives Kennedy and Ferrell may have had is of no consequence and cannot be considered as part the Court's probable cause analysis. Accordingly, the Court agrees with Magistrate Judge Lee's conclusion that Detectives Kennedy and Ferrell had probable cause to stop the vehicle upon observing that Defendant's seat belt was unfastened, and Defendant's objection in this regard is **OVERRULED**.

### B. Defendant's Second Motion to Suppress

Defendant's Second Motion to Suppress sought to challenge the propriety of the "pat down" that led to the discovery of two pills, and then led to a second search incident to arrest during which the gun which resulted in the instant charge was discovered. (Court Doc. 27, Def.'s Second Mot. to Suppress at 1-2.) In her second R&R, Magistrate Judge Lee first found that Defendant's consent to the search of his person was made knowingly and voluntarily. (Second R&R at 5-8.) Magistrate Judge Lee reached this conclusion after extensive analysis of the circumstances surrounding Defendant's consent, in which she rejected Defendant's contention that he was in custody when he was asked for consent and found that there was no evidence of threats or coercion used to force him to consent. (*Id.* at 5-7.) Magistrate Judge Lee found that Defendant had prior experience with law

enforcement, such that he had an intelligent understanding of the legal process and was not coerced to give consent. (*Id.* at 7-8.) Finally, Magistrate Judge Lee noted that Defendant made a decision to agree to the search in hopes of avoiding arrest. (*Id.*) Accordingly, Magistrate Judge Lee found that the Government successfully established by a preponderance of the evidence that Defendant's consent was valid because it was knowingly and voluntarily made. (*Id.*)

Magistrate Judge Lee then turned to the scope of Defendant's consent and determined that Defendant had not attached any limitations to his consent. (*Id.* at 9.) Magistrate Judge Lee noted that Detective Kennedy was searching for weapons and drugs and found that the search did not exceed those purposes because the pills were found within the permissible bounds of the search. (*Id.*) Magistrate Judge Lee found that a reasonable person would have understood that Defendant was giving consent to search his person for drugs and guns and found that the Government had shown by a preponderance of the evidence that the search of Defendant was within the scope of his consent. (*Id.*)

In his Objection, Defendant argues that he was only subject to a frisk because the car was stopped for a traffic violation and the detectives had no reasonable suspicion or probable cause which would warrant a full search. (Court Doc. 46, Def.'s Second Objs. at 2-3.) Defendant further argues that the detectives could only have cause to pat him down for officer safety and to check him for marijuana, which was found on Mr. Blair, his companion -- therefore, a full search of his person exceeded the scope of the consent. (*Id.* at 3.)

As recounted in the facts from the evidentiary hearing, Detective Kennedy testified that he first asked Defendant if he had weapons or drugs on his person. (Second R&R at 2.) When Defendant answered in the negative, Detective Kennedy asked, "Can I search you?" and Defendant answered "Yes." (*Id.*) Detective Kennedy testified that he was not performing a pat down or frisk of Defendant and rather was performing a search pursuant to Defendant's consent. (*Id.*) Detective Kennedy understood that the scope of his consent was limited to the discovery of certain contraband he suspected Defendant might have on his person (i.e., drugs, in part because the detectives recovered marijuana from Mr. Blair). (*Id.* at 2-3.) Shortly into the search, Detective Kennedy felt a pill in Defendant's pocket and asked him what it was. (*Id.* at 2.) Defendant was unresponsive, and Detective Kennedy asked if it was "X" (Ecstasy) to which Defendant replied that it was. (*Id.*) After receiving consent to search Defendant's apartment and finding no contraband inside, Detective Kennedy placed Defendant under arrest for possession of Ecstasy and searched him incident to the arrest. (*Id.* at 3.) It was during this second search that Detective Kennedy discovered the gun in Defendant's waistband. (*Id.*)

The Sixth Circuit has stated that "[w]hen law enforcement officers rely upon consent as the basis for a warrantless search, the scope of the consent given determines the permissible scope of the search." *United States v. Garrido-Santana*, 360 F.3d 565, 575 (6th Cir. 2004) (citation and internal quotations omitted). "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness-what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *United States v. Canipe*, 569 F.3d 597,

604 (6th Cir. 2009) (citation and internal quotations omitted).

Defendant seems to be objecting to what he terms was a "pat down," but it is clear to the Court that Detective Kennedy's justification for the search was not an officer safety frisk and the search was instead based on Defendant's consent. The Court agrees with Magistrate Judge Lee's conclusion that Defendant gave Detective Kennedy consent to search him and that the consent was valid because it was knowingly and voluntarily made. Detective Kennedy asked for consent to search after Defendant denied having weapons or drugs on him, Defendant responded affirmatively that Detective Kennedy could search his person, and Detective Kennedy proceeded to search him. Based on the marijuana found on Mr. Blair, Detective Kennedy knew that he was searching Defendant for drugs, and he almost immediately encountered a pill in Defendant's pocket. When asked if the pill was Ectasy, Defendant answered in the affirmative.

Moreover, there was nothing improper about Detective Kennedy's search of Defendant that would persuade the Court that Detective Kennedy exceeded the scope of Defendant's consent. Defendant placed no limitations on his consent, and the Court finds that a reasonable person would have believed Defendant's consent to be general and not restricted in any way. Even so, Detective Kennedy did not take Defendant's general consent as granting him full liberties and understood that the scope of consent, under the circumstances, restricted him to searching for contraband, i.e., drugs. Detective Kennedy then conducted the search with those restrictions in mind.

The Court concludes that Detective Kennedy's search of Defendant was proper. The Court agrees with Magistrate Judge Lee's conclusion that Defendant's consent was valid and that Detective Kennedy did not exceed the scope of Defendant's consent when

he conducted the search. Accordingly, Defendant's objection to Magistrate Judge Lee's R&R concerning the Second Motion to Suppress is **OVERRULED**.

IV. **CONCLUSION**

For the reasons explained above, the Court **ORDERS** that Defendant's Objections [Court Docs. 21 & 46] are **OVERRULED**, that both of Magistrate Judge Lee's R&Rs [Court Docs. 17 & 42] are **ACCEPTED and ADOPTED** in their entirety, and that Defendant's Motion to Suppress [Court Doc. 11] and Defendant's Second Motion to Suppress [Court Doc. 27] are both **DENIED**.

**SO ORDERED** this 8th day of April, 2011.

                                          /s/Harry S. Mattice, Jr.
                                          HARRY S. MATTICE, JR.
                                          UNITED STATES DISTRICT JUDGE